IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LISA GAYNELL HARRIS,           )
                               )
        Plaintiff,             )
                               )
v.                             )        CASE NO. 1:15-cv-838-TFM
                               )        [wo]
NANCY A. BERRYHILL,[1]         )
Acting Commissioner of Social Security, )
                               )
        Defendant.             )

## MEMORANDUM OPINION AND ORDER

On August 30, 2012, Lisa Gaynell Harris ("Plaintiff" or "Harris") applied for disability

insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability

date of May 8, 2012. (Tr. 172, 174). The application was initially denied on December 13,

2012. (Tr. 70-80). Thereafter, Harris filed a request for a hearing and on April 4, 2014, the

ALJ held a video hearing. (Tr. 47-70). Although Plaintiff appears pro se before the Court

now, she was represented by counsel at the hearing. (Tr. 46). The ALJ rendered an

unfavorable decision on April 24, 2014. (Tr. 39). The Appeals Council denied Plaintiff's

request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the

Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant

to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and

---

1 Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as
the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of
section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is to be REVERSED and REMANDED.

## I. NATURE OF THE CASE

Johnson seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and social security income. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971));

*Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of
> not less than 12 months.

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).[4]

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[5]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the

---

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

[5] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Harris was forty-two years old, had a high school diploma, and had taken several college classes, when the ALJ rendered his decision. (Tr. 50). She has past clerical work experience with the military, where she served about 20 years. She has a 100 percent service-connected disability from the military and receives both military retirement and

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

disability pay. (Tr. 48-51, 191). However, the VA determined that her "[e]titlement to individual unemployability is denied." (Tr. 191).

VA's disability rating assignments are included in the record and generally referred to by the ALJ multiple times. The VA's disability determination is summarized as follows: (Right and left lower extremity diabetic neuropathy 10%; Rhinitis, 0%; Right should strain 10%; Anxiety disorder not otherwise specified with dysthymic disorder 70%; neck strain 30%; Right wrist carpal tunnel syndrome 30%; Low back strain 20%; Irritable Bowel Syndrome with gastroesophageal reflux disease 30%; Migraine headaches 30%; Diabetes mellitus type II 20%; Left and right knee strain 10%; Right ankle strain 10%; Left and right hip strain 10%; Tinnitus 10%); bilateral feel frostbite 10%; Left ankle strain 0%; Bilateral tinea pedis 0%; Eczema 0%). (Tr. 190-191). The VA disability rating further explains "[w]e do not add the individual percentages of each condition to determine your combined rating. We use a combined rating table that considers *the effect from the most serious to the least serious conditions*." (Emphasis added.) (Tr. 191).

Harris testified at the hearing before the ALJ. (Tr. 46-68). She stated that she can perform some chores around the house, but because of the pain in her knees and back that she can work for only about 15 to 20 minutes before taking a break. (Tr. 53-54). After sitting about 30 to 40 minutes, she stated that her legs will start cramping and she has to move around. (Tr. 54). She does her own grocery shopping about once or twice a month and she uses the regular basket, not a motorized cart. (Tr. 55). Plaintiff suffers from migranes and she testified that they have gotten worse since she retired from the military, and she has them three to four times a week. (Tr. 57). Plaintiff also has diabetes. She reported that her "feet

stay cold all the time" and that sometimes she has a burning sensation in her feet. She also has carpal tunnel syndrome and she stated that three to four times a month her "hand loses it's shape." (Tr. 59-60). She further reported that she has anxiety and "problems socializing with other people" and that she has "nightmares about being in Iraq." (Tr. 61). Plaintiff alleged disability based on diabetes, migraine headaches, right shoulder/neck pain, lumbago, bilateral anterior knee pain, eczema, gastroesophageal reflux disease, irritable bowel syndrome, adjustment disorder, insomnia, uterine fibroids, allergic rhinitis, history of frostbite of the feet, tinnitus, high blood pressure, high cholesterol and acid reflux. (Tr. 32, 200).

The ALJ found Plaintiff had severe impairments of diabetes mellitus, osteoarthritis of the knees, obesity, migraines, anxiety disorder, and dysthymic disorder. (Tr. 28). The ALJ also found that Plaintiff's right shoulder strain, hysterectomy, neck strain, right carpal tunnel syndrome, low back strain, irritable bowel syndrome with gastroesophageal reflux, right ankle strain, bilateral hip strain, tinnitus, and bilateral frost bite, high blood pressure, high cholesterol, eczema, and allergic rhinitis were "not severe impairments, as they do not cause more than minimal functional limitations". (Tr. 28-29, 30, 33). The ALJ determined Plaintiff's conditions did not meet or medically equal the criteria for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30). The ALJ then found that Plaintiff retained the residual functional capacity to perform light work, except she:

cannot climb ladders, ropes, or scaffolds or work at unprotected heights, [but] can occasionally climb stairs, stoop, kneel, crouch, and crawl. The claimant cannot tolerate concentrated exposure o hazards in the workplace. The claimant can perform simple, routine tasks of unskilled work that require simple workplace decisions and ordinarily have few

changes in the work setting. The claimant is able to interact with coworkers, supervisors, and the public on a basic level.

(Tr. 32). A vocational expert, Charles Miller, testified that based upon Plaintiff's age, education, work experience and residual functional capacity, Plaintiff would be able to perform her past relevant work as both a mail clerk and a general clerk. (Tr. 62-64). Thus, the ALJ concluded that Plaintiff was not disabled through the date of his decision. (Tr. 38).

## V. MEDICAL HISTORY

Plaintiff was treated at Lyster Army Community Hospital between June 7, 2010 and August 28, 2012 for a variety of complaints including -- knee pain where "mild degenerative changes bilaterally" were noted (Tr. 237); hip, ankle and wrist pain (Tr. 238, 239, 245,); right ankle sprain (Tr. 297, 299); diabetes (Tr. 251, 265, 269, 272, 301, 313); hypertension (Tr. 257); anxiety and depression (Tr. 276, 280) allergies (Tr. 253, 285, 286, 291, 293); reflux (Tr. 286); and upper respiratory congestion (Tr. 305, 307). In late September to early October of 2012, Plaintiff presented to Central Alabama HCS "to assess psychosocial stessors/concerns. (TR. 331-366). She tested positive in a PTSD screening test. (Tr. 364). From July 24, 2012 until July 17, 2013, Plaintiff was treated at Central Alabama HCS for dysthymia, anxiety, migraines, constipation, depression, hyperlipidemia, and diabetes. (Tr. 380-381, 410, 418, 422, 430, 470; 480,); numbness and tingling of the feet (Tr. 399); knee pain and brace provided (Tr. 403; 465, 484) and migraines (Tr. 454). From July 6, 2013 until March 7, 2014, Plaintiff was again treated at Lyster Army Community Hospital for recurring complaints including, diabetes (Tr. 496, 497, 500-505); hyperlipidemia, (Tr. 497);

hypertension (Tr. 497).  On April 17, 2013, she was treated for allergies at Alabama Asthma and Allergy, P.C. (Tr. 507-508).

On October 24, 2012, Plaintiff saw, family practitioner, David H. Arnold, M.D. for a consultative examination. (Tr. 368-375). Dr. Arnold diagnosed Plaintiff with depression, anxiety, hypertension, gastroesophageal reflux, diabetes type 2 and hypercholesterolemia. (Tr. 374).  He noted that Plaintiff had "normal station, gate is stable" (Tr. 371).  He further noted "normal muscle strength"; however, back spasms were present and "worse with movement".  As far as Plaintiff's right, left knee and ankle, he noted "normal stability, no laxity". (Tr. 372).  He stated that exam shows "mild crepitus of the knees, but no significant joint deformities."  Further, he stated that "xrays of the knees and ankles show no acute or severe joint/bone deformities or abnormalities." (Tr. 374).  Also, x-rays of the "AP and lateral lumbar spine" showed "early proliferative change at L4.") (Tr. 377).

Plaintiff alleges that she is disabled due to diabetes, migraine headaches, right shoulder and neck pain, lumbago, bilateral knee pain, eczema, gastroesophageal reflux disease, irritable bowel syndrome, adjustment disorder, insomnia, fibroid uterus, allergic rhinitis, history of frostbite of the feet tinnitus, high blood pressure, high cholestrerol, and acid reflux.  (Tr. 32).

## VI.  ISSUE TO BE CONSIDERED

Whether the ALJ properly considered the VA's disability rating?

## VII.  ANALYSIS

The ALJ recognized that Plaintiff was assigned a permanent 100% disability rating

from the VA for her service connected disabilities effective May 2012. (Tr. 28, 29, 33, 37,

189-195). Although this rating is to be given "great weight", it is not binding on the ALJ.[7]

*Brady v. Heckler,* 724 F. 2d 914, 917-921 (11th Cir. 1984) (Reversing for failure to give

"great weight" to VA disability rating where the ALJ found Plaintiff suffered from no severe

impairment.) Moreover, the ALJ must "expressly consider[] and closely scrutinize[]" the

VA's determination in his opinion. *Adams v. Comm'r of Soc. Sec.,* 542 F. App'x 854, 857

(11th Cir. 2013) (Affirming where "ALJ did not expressly state that he gave 'great weight' to

the VA's rating", but "record shows that he expressly considered and closely scrutinized it.").

Additionally, where an ALJ discounts the VA's disability determination, he "must give

specific reasons" therefore. *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.,* 673 Fed. Appx.

902, 904 (11th Cir. 2016) (Reversing where ALJ stated he gave VA's disability

determination "little weight" and ALJ's findings about Plaintiff's credibility were not

supported by substantial evidence). However, an ALJ's determination that the VA's decision

"had little bearing" on Plaintiff's Social Security claim was not reversible error where "[t]he

ALJ's specific reasons for discounting the VA's determination show he considered and

closely scrutinized that determination." *Ostborg v. Comm'r of Soc. Sec.,* 610 Fed. Appx.

907, 914 (11th Cir. 2015) (Affirming where substantial evidence supported the ALJ's RFC

and credibility determinations and ALJ did not misapply law in discounting VA

determination).

---

7 Indeed, a disability finding under the Social Security Act, requires Plaintiff to satisfy a more stringent standard. *See Pearson v. Astrue,* 271 Fed. Appx. 979, 981 (11th Cir. 2008) citing 42 U.S.C.§§ 423(d)(2)(A), 1382c(a)(3)(B).

In the instant case, the ALJ stated that he gave "little weight" to the VA disability determination, because a VA rating is "not binding" on the Social Security Administration and because the conclusion Plaintiff is able to perform a "reduced range of light unskilled work . . . is supported by the treatment records from Lyster Army Health Clinic and the VA and the examination findings of Dr. Arnold." (Tr. 37). The ALJ clearly erred in considering the VA disability rating when he stated that he gave it "little weight". *Brown-Gaudet-Evans*, *id*. Moreover, the ALJ failed to give specific reasons for discounting the VA determination, and therefore, did not "show that he considered and closely scrutinized that determination." *Ostborg,* 610 Fed. Appx. at 914. Although the ALJ included a thorough recitation of the medical evidence of record and mentioned the VA disability findings multiple times, (Tr. 28-38), his reasons for discounting the ALJ' opinion do not include the level of specificity required to demonstrate that he "closely scrutinized" the VA determination. *Brown-Gaudet-Evans*, *id.* Accordingly, the Court concludes that this case is due to be remanded so that the ALJ can consider Plaintiff's claim for benefits after affording "great weight" to the VA's 100% disability determination. *Cornelius v. Sullivan,* 936 F. 2d 1143, 1145-46 (11th Cir. 1991) (Secretary's failure to apply the correct law . . . mandates reversal.)

Additionally, the Court reads the relevant case law as requiring the Court to consider whether substantial evidence supports the ALJ's opinion, even where he fails to give the correct weight to a VA disability determination. *Id.* (Reversed where substantial evidence did not support ALJ's finding discounting Plaintiff's credibility as to her complaints of fibromyalgia); *Brady,* 724 F. 2d 914 (Reversed where substantial evidence did not support ALJ's finding of no severe impairment); *Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir.

Unit A March 25, 1981) (Reversed where no substantial evidence that Plaintiff was "capable of performing substantial gainful employment" and insufficient weight given to VA rating.)

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, except she:

> cannot climb ladders, ropes, or scaffolds or work at unprotected heights, [but] can occasionally climb stairs, stoop, kneel, crouch, and crawl. The claimant cannot tolerate concentrated exposure to hazards in the workplace. The claimant can perform simple, routine tasks of unskilled work that require simple workplace decisions and ordinarily have few changes in the work setting. The claimant is able to interact with coworkers, supervisors, and the public on a basic level.

(Tr. 32). A residual functional capacity assessment is used to determine a claimants' capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis v.* 125 F.3d at 1440. The Court concludes that the RFC is not supported by substantial evidence because the ALJ did not expressly and specifically consider how the VA disability determination impacted his finding of the Plaintiff's RFC. *Moore,* 405 F.3d at 1211.

It is not clear to the Court at this time whether the ALJ's conclusion that Plaintiff is not disabled will be altered by the application of the correct legal standard for consideration of the VA disability rating. Accordingly, the Court refuses to reverse and remand for an award of benefits. Rather, the Court concludes remand is appropriate so that the ALJ can apply the correct legal standard of "great weight" to the VA's determination and make a determination of Plaintiff's residual functional capacity in light of the VA's disability determination.

## VIII. CONCLUSION

Accordingly, for the reasons discussed, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) so that the Commissioner can conduct additional proceedings consistent with this opinion.

A separate judgment is entered herewith.

DONE this 18th day of September, 2017.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE